# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7081 - 01 C 5139, 01 C 6474, 01 C 7575, 01 C 7659, 02 C 1371 & 02 C 7760 | **DATE** | 5/30/2003 |
| **CASE TITLE** | Lewis, et al. vs. Washington, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order granting in part and denying in part defendants' motion for summary judgment. Summary judgment on all claims is entered in favor of defendants Currie and Gaetz. Summary judgment is also entered in favor of all other defendants with respect to claims against them in their personal capacities. To the extent that plaintiffs' action seeks relief against the remaining defendants in their official capacities, summary judgment is denied. Pretrial order will be due by 7/11/03; and response to any motions in limine by 7/25/03. Pretrial conference set for 8/8/03 at 3:30 p.m. Trial set for 9/8/03 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 8 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUN 0 2 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 12 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 5/30/2003 | |
| | | | date mailed notice | |
| MPJ | courtroom deputy's initials | | MPJ | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL LEWIS, et al.,** | ) | No. 99 C 7081 |
| | ) | |
| Plaintiffs, | ) | RELATED CASES: |
| | ) | Nos. 01 C 5139 |
| v. | ) | 01 C 6474 |
| | ) | 01 C 7575 |
| **ODIE WASHINGTON, et al.,** | ) | 01 C 7659 |
| | ) | 02 C 1371 |
| Defendants. | ) | 02 C 7760 |



DOCKETED
JUN 0 2 2003

## MEMORANDUM OPINION AND ORDER

Plaintiffs, state inmates at Stateville Correctional Center in Joliet, sued defendants, various prison officials, under 42 U.S.C. § 1983 for violations of their constitutional rights while they were in "Category IV Protective Custody." I certified a class of about 160 inmates who have been placed in Category IV since the beginning of 1995. *Lewis v. Washington*, 197 F.R.D. 611, 612 (N.D. Ill. 2000). Defendants now move for summary judgment. I grant the motion in part.

### I. Background

Protective custody refers to the separation of inmates from the general prison population. Inmates may request to be placed in protective custody, which is divided into four categories. When an inmate so requests, he is placed in protective custody as soon as possible. While his application for protective custody is pending, he is placed in Category III protective custody. Inmates whose applications are approved are placed in Category I or II protective

12

custody. Inmates whose applications are denied are returned to the general prison population, unless they appeal the denial. In that case, inmates are placed in Category IV.

Plaintiffs claim that while in Category IV protective custody, they are denied access to communal religious services, educational opportunities, drug and alcohol rehabilitation services, the gym, and hot food. They also claim that they are denied access to the main exercise yard, and instead relegated to a small yard without amenities available in the main yard.[1]

## II. Analysis

Defendants raise five arguments in their motion for summary judgment. First, they argue that the claims of any plaintiffs who have not exhausted their administrative remedies should be dismissed. Second, they argue that there is no case or controversy because plaintiffs are no longer in Category IV protective custody. Third, they argue that injunctive relief is unwarranted because the operation of Category IV protective custody has changed. Fourth, they argue that the involvement of defendants Tyree Currie and Donald Gaetz in Category IV decision-making was not sufficient to make them liable under § 1983. Finally, defendants argue that they are entitled to qualified immunity.

---

[1] Plaintiffs also complained that while in Category IV protective custody, they are denied access to the law library and trained legal assistance. These claims were previously dismissed. *Lewis*, 197 F.R.D. at 616.

2

A.  Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Defendants argue that many members of the plaintiff class have not exhausted their administrative remedies, and that judgment should therefore be entered against those plaintiffs. Defendants do admit, however, that four plaintiffs "have nominally complied with exhaustion requirements." (Defs.' Mem. Supp. Mot. Summ. J. at 10 n.2.) Plaintiffs argue that exhaustion of administrative remedies by one class member is sufficient to satisfy the exhaustion requirement as to the entire class. In support, they cite *Rahim v. Sheahan*, No. 99 C 0395, 2001 WL 1263493 (N.D. Ill. Oct. 19, 2001) (Schenkier, Mag.) and *Jones 'El v. Berge*, 172 F. Supp. 2d 1128 (W.D. Wis. 2001).

Both *Rahim* and *Jones 'El* analogized the exhaustion requirement in PLRA class actions to the exhaustion requirement in Title VII employment discrimination class actions.[2] It is well established

---

[2] Title VII requires a plaintiff to file a timely complaint with the EEOC and receive a right to sue letter before they may

3

that in the Title VII context, the exhaustion requirement is satisfied when one member of a class has complied with the requirement; each member of the class need not exhaust administrative remedies. *Romasanta v. United Airlines, Inc.*, 537 F.2d 915, 919 (7th Cir. 1976), *aff'd sub nom. United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977). Both *Rahim* and *Jones 'El* found that this rule of vicarious exhaustion applies in PLRA class actions. *Rahim*, 2001 WL 1263493 at *7; *Jones 'El*, 172 F. Supp. 2d at 1132-33. I find the analogy compelling, and likewise hold that one class member's exhaustion of administrative remedies satisfies the PLRA's exhaustion requirement as to the entire class.

The purpose behind enactment of the PLRA exhaustion requirement was "to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. To this end, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. *Id.* at 524-25. The *Porter* Court noted that in some cases, prison officials may take corrective action to address an inmate's concerns, thus obviating the need for litigation. *Id.* at 525. This rationale for the PLRA exhaustion requirement is similar to the purpose behind the Title VII exhaustion requirement, which is to allow the EEOC "an opportunity to settle disputes ... before the

---

bring suit in federal court. *See Zugay v. Progressive Care, S.C.*, 180 F.3d 901, 902 (7th Cir. 1999) (citing 42 U.S.C. §§ 2000e-5(b), (e), (f)).

4

aggrieved party [is] permitted to file a lawsuit." *Zuckerstein v. Argonne Nat'l Lab.*, 663 F. Supp. 569, 572 (N.D. Ill. 1987) (Moran, J.) (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974)). In the Title VII context, this purpose behind administrative exhaustion is satisfied in class action suits where there is one complying plaintiff because

> [i]t would be wasteful, if not vain, for numerous employees, all with the same grievance, to have to process many identical complaints with the EEOC. If it is impossible to reach a settlement with one discriminatee, what reason could there be to assume that the next one would be successful.

*Id.* (quoting *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 498 (5th Cir. 1968)). Similarly, in the PLRA context, the purpose of affording prison officials an opportunity to address complaints internally is met when one plaintiff in a class action has exhausted his administrative remedies. To require each inmate with the same grievance to exhaust their administrative remedies would be wasteful, and "[a]s long as prison officials have received a single complaint addressing each claim in a class action, they have the opportunity to resolve disputes internally and to limit judicial intervention in the management of prisons." *Jones 'El*, 172 F. Supp. 2d at 1133. The analogy to the Title VII exhaustion requirement is apt. The purpose behind the PLRA requirement is met when a single plaintiff in a class action has exhausted his administrative remedies, and a rule of vicarious exhaustion in PLRA cases is therefore appropriate. Because defendants admit that at

5

least four plaintiffs here have complied with the exhaustion requirement, I will not enter judgment against any class member for failing to exhaust administrative remedies.

## B. Case or Controversy

Defendants next argue that there is no case or controversy because the named plaintiffs are no longer in Category IV protective custody. While the general rule is that an Article III case or controversy must exist at every stage of litigation, there is a special rule for class actions that allows named plaintiffs to continue representing a class even after their own claims are moot. *Trotter v. Klincar*, 748 F.2d 1177, 1183 (7th Cir. 1984). This is based on the fiction that once a class is certified, the class obtains a legally cognizable interest independent of that of the named plaintiffs, and the class claims thus preserve the adversarial interest needed for the invocation of jurisdiction. *Id.* (citing *Sosna v. Iowa*, 419 U.S. 393 (1975)). Because the named plaintiffs were in Category IV protective custody when the original complaint was filed, and because there are still inmates in Category IV protective custody, there exists an Article III case or controversy whether or not the named plaintiffs are still in Category IV protective custody. *See Sosna*, 419 U.S. at 402 (noting that a live controversy may exist "between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot").

## C. Changed Circumstances

Defendants next argue that protective custody operations at Stateville changed in February 2002 such that there are no longer constitutional violations occurring that warrant injunctive relief. Specifically, defendants claim that the length of time inmates spend in Category IV protective custody has been reduced to less than sixty days, and that the average number of inmates in Category IV at any one time is less than ten. Even if it is true, as argued by defendants, that only short term deprivation of constitutionally required privileges or deprivation of various privileges to only small groups of inmates now renders Category IV free of constitutional violations, "[v]oluntary cessation of allegedly illegal conduct does not render a case moot unless the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.'" *Milwaukee Police Ass'n*, 192 F.3d 742, 747 (7th Cir. 1999). The February 2002 changes to which defendants refer apparently occurred because the closing of Joliet Correctional Center that month created a bed space shortage at Stateville, necessitating certain changes in protective custody operations. (Catchings Aff. ¶ 5.) However, as defendants point to no statute or regulation implementing the change, they have failed to demonstrate that there is no reasonable expectation that the alleged wrong will be repeated. *See Sefick v. Gardner*, 164 F.3d 370, 372 (7th Cir. 1998) ("[T]he current ... policy, adopted after

7

the commencement of this suit, is not implemented by statute or regulation and could be changed again, so this voluntary cessation of the challenged conduct does not eliminate the controversy."). The claim for injunctive relief may therefore proceed.[3]

D. Defendants Currie and Gaetz

Defendants next argue that Tyree Currie and Donald Gaetz, two of the named defendants, were not sufficiently responsible for the alleged constitutional violations such that they can be held liable under § 1983. This argument was made earlier in this litigation on a motion to dismiss. In denying that motion, I indicated that "[i]f there is some causal connection or affirmative link between the action complained about and the official sued, there can be § 1983 liability." *Lewis*, 197 F.R.D. at 613-14 (internal citations omitted). I rejected defendants' argument that plaintiffs had failed to describe any of the specific acts or omissions of the defendants because at that stage they were not required to do so.

---

[3] Defendants in this section of their brief also argue that plaintiffs have asserted no conditions of Category IV protective custody that fall below the standard set by a 1989 remedial order relating to protective custody conditions at Stateville. Reference to the remedial order here is inappropriate, however, as the order explicitly stated that it was not setting standards for Category IV. *Williams v. Lane*, No. 81 C 355 (N.D. Ill. remedial order entered Feb. 28, 1989) (Shadur, J.) ("This Remedial Order does not establish such standards for inmates ... who have been determined not to need protective custody (currently those inmates are referred to as Category 4 inmates) but who are held in a protective custody unit pending the resolution of the grievance of that determination. Any reference in this Remedial Order to Category 3 or 4 inmates is only for convenience and clarification.").

*Id.* (citing *Leatherman v. Tarrant County Narcotics & Intelligence Coordination Unit*, 507 U.S. 163, 168 (1993)). At the summary judgment stage, however, more is required. Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported ... [the adverse party] must set forth specific facts showing that there is a genuine issue for trial."). Here, defendants present affidavits from Mr. Currie and Mr. Gaetz stating that while they were responsible for assigning security staff to the protective custody unit (including Category IV), they "did not administer, direct, manage, provide or oversee the provision of programs or services such as religious services, jobs, education or recreation to [Category IV]." (Currie Aff. ¶ 2; Gaetz Aff. ¶ 2.) In response, plaintiffs present affidavits from inmates indicating that Mr. Currie and Mr. Gaetz were aware of the conditions in Category IV protective custody and failed to do anything about it. (Cage Aff. at 1) ("While in [Category IV] Warden Currie and Asst Warden Gaetz ... has [sic] come up there on numerous occassion [sic] and seen how the living condition's was [sic] [and] neither one of them attempted to do anything about what was going on."); (Jamison Aff. ¶ 7) ("I personally spoke with then Assistant Warden Tyree Currie on two (2) separate occasions regarding the lack of appropriate services in Category IV protective custody."); (Parker Aff. at 1) ("Donald Gaetz and Tyree Currie knew about the living conditions [in Category IV] but fell [sic] to do anything about it.").

9

The fact that Mr. Currie and Mr. Gaetz may have been aware of how Category IV protective custody was run is not sufficient to impose liability on them. Absent the power to change the way in which Category IV is administered, Mr. Currie and Mr. Gaetz have no causal connection or affirmative link to the alleged violations. Here, defendants have provided evidence that Mr. Currie and Mr. Gaetz had no hand in deciding which programs and services would be provided to inmates in Category IV protective custody. Plaintiffs present no evidence to the contrary. As such, summary judgment in favor of defendants as to Mr. Currie and Mr. Gaetz is proper.

E. Qualified Immunity

Defendants next argue that they are protected from suit and damages by the application of qualified immunity. Qualified immunity is a defense only to personal capacity suits. *Conner v. Reinhard*, 847 F.2d 384, 394 n.8 (7th Cir. 1988) (citing *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985)). Thus, to the extent that plaintiffs claims are brought against defendants in their official capacities, (Compl. at 6) ("All defendants are sued as individuals and in their official capacities"), defendants are not shielded by qualified immunity.

With respect to the extent to which the complaint asserts personal capacity claims, I find that defendants are shielded by qualified immunity. "Qualified immunity protects government officials from civil liability when performing discretionary

functions so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This immunity provides protection for "all but the plainly incompetent or those who knowingly violate the law." *Sherman v. Four County Counseling Ctr.*, 987 F.2d 397, 402 (7th Cir. 1993) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). I find that the constitutional rights asserted by plaintiffs here are not "clearly established" for purposes of denying defendants qualified immunity. While inmates in protective custody generally may have clearly established first amendment rights to communal religious services and fourteenth amendment rights to programs and services equivalent to those offered other inmates, *see, e.g., Williams v. Lane*, 646 F. Supp. 1379, 1406-07, 1409 (N.D. Ill. 1986) (Shadur, J.), it is not clearly established whether inmates in Category IV specifically share these rights. As noted above, *see supra* note 3, the *Williams* remedial order explicitly distinguished between Categories III and IV protective custody and Categories I and II protective custody. Thus, this remedial order, entered after the written opinion in *Williams* that found that protective custody inmates had first and fourteenth amendment rights to various programs and services creates confusion as to whether these rights extend to Category IV inmates. This

11

confusion is sufficient for me to find that defendants are entitled to qualified immunity against personal capacity claims alleging abridgement of these rights. *See Alvarado*, 267 F.3d at 652 ("[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.") (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

### III. Conclusion

Defendants' motion for summary judgment is GRANTED IN PART. Summary judgment is entered in favor of defendants Currie and Gaetz. Further, summary judgment is entered in favor of all other defendants with respect to claims against them in their personal capacities. To the extent that plaintiffs' action seeks relief against the remaining defendants in their official capacities, however, summary judgment is denied.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated: May 30, 2003

12